1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   ROSALIA RAZO,                           Case No. 1:21-cv-01802-CDB (SS)

12              Plaintiff,                    ORDER GRANTING PLAINTIFF'S
                                             MOTION FOR SUMMARY JUDGMENT
13        v.                                 AND REMANDING ACTION PURSUANT
                                             TO SENTENCE FOUR OF 42 U.S.C.
14   COMMISSIONER OF SOCIAL SECURITY,        §405(g)

15              Defendant.                    (Doc. 18)

16

17

18        Plaintiff Rosalia Razo ("Plaintiff") seeks judicial review of a final decision of the

19   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

20   disability benefits under the Social Security Act ("SSA" or "Act").  (Doc. 1).  The matter is before

21   the Court on the Administrative Record (Doc. 13, hereinafter "AR") and the parties' briefs (Docs.

22   18, 21), which were submitted without oral argument.  Upon review of the record, the Court finds

23   and rules as follows.[1]

24   ///

25   ///

26

27        [1] On March 2, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate Judge
     for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to a U.S.
28   Magistrate Judge.  (Doc. 11).

1  I.        **BACKGROUND**

2         A.       **Administrative Proceedings and ALJ's Decision**

3         On January 15, 2019, Plaintiff applied for a period of disability and disability insurance

4  benefits with an alleged onset date of January 15, 2019.  (AR 187).  Plaintiff's claim was initially

5  denied on May 2, 2019, and again upon reconsideration on September 18, 2019.  (AR 97, 107).

6  Plaintiff requested a hearing before an Administrative Law Judge on October 2, 2019.  (AR 21).

7  Matthew C. Kawalek, the Administrative Law Judge ("ALJ"), held a telephone hearing on

8  November 18, 2020, wherein Plaintiff, represented by counsel, and impartial vocational expert

9  Dennis Duffin both testified.  *Id.*  The ALJ issued an unfavorable decision on February 11, 2021,

10  finding Plaintiff was not disabled.  (AR 18-37).  The Appeals Council denied Plaintiff's request for

11  review on July 14, 2021, rendering the ALJ's decision as the final decision of the Commissioner.

12  (AR 7).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc.

13  1).

14         In the decision, the ALJ considered Plaintiff's claims using the five-step sequential

15  evaluation required by 20 C.F.R. § 416.920(a).  (AR 22-38).  At step one, the ALJ found that

16  Plaintiff had not engaged in substantial gainful activity since January 15, 2019, the alleged onset

17  date.  (AR 23).

18         At step two, the ALJ found that Plaintiff has the following severe impairments: Baker's cyst

19  of the left knee; degenerative joint disease of the bilateral knees status post total knee arthroplasty

20  of the right knee; degenerative joint disease of the right hip; status post total left hip arthroplasty;

21  rheumatoid arthritis; and morbid obesity.  *Id.*  The ALJ determined that Plaintiff's medically

22  determinable impairments ("MDIs") significantly limit her ability to perform basic work activities

23  as required by Social Security Ruling ("SSR") 85-28.  *Id.*  The ALJ noted that though Plaintiff

24  alleged additional impairments, these impairments are deemed non-severe.  (AR 23-24).

25         At step three, the ALJ found that Plaintiff did not have an impairment, or any combination

26  of impairments, that meets or medically equals the severity of one of the listed impairments in 20

27  C.F.R. Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ found that Plaintiff does not meet the specific

28  requirements of listing 1.02 for Baker's cyst of the left knee, degenerative joint disease of the

2

bilateral knees status post total knee arthroplasty of the right knee, degenerative joint disease of the right hip, or status post total left hip arthroplasty, because the record does not provide evidence of involvement of one major peripheral weight-bearing joint resulting in an inability to ambulate effectively.  (AR 26).  The ALJ noted the record indicates Plaintiff was able to rely on her cane to ambulate for longer distances, was able to regularly ride a tricycle to pick up her daughter, denied knee pain, and treatment notes showed normal findings of strength, sensation, and gait despite residual loss of range of motion.  *Id.* (citing Exs. 12F, 19F, 22F, 23F, 26F).  The ALJ further found that Plaintiff's rheumatoid arthritis does not meet the specific requirements of listing 14.09 and that under SSR 19-2p, Plaintiff's obesity does not meet or equal the listing requirements.  *Id.*

Prior to step four, the ALJ found that Plaintiff has the RFC to perform a reduced range of sedentary work as defined in 20 C.F.R. § 416.967(a) in that Plaintiff can:

> stand and/or walk for up to one hour and sit for up to eight hours of an eight-hour workday, and she requires a cane for ambulation.  She can occasionally operate foot controls or push/pull with the bilateral lower extremities.  [Plaintiff] can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs.  She can tolerate no more than a moderate noise level.  She can tolerate no more than frequent exposure to temperature extremes, wetness, humidity, vibration, or pulmonary irritants, and she can have no exposure to hazards, including unprotected heights.

(AR 26).  In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. § 416.929 and SSR 16-3p and considered the medical opinion(s) and prior administrative medical finding(s) in accordance with 20 C.F.R. § 416.920c.  (AR 27).  The ALJ considered Plaintiff's alleged disability due to knee and hip impairments and rheumatoid arthritis and noted the following from her hearing testimony:

> [S]he was unable to work because of sharp pain in her knees and hips; without the assistance of a cane, she was able to stand for no more than 20 minutes;  even prior to her alleged onset date, she used a cane at work; she has pain all over her body, and that while on some days she may feel fine, on other days she may wake up in pain; she had problems with reaching, grasping, and lifting things; she occasionally has difficulty typing or writing; she takes medications to help relieve pain, but that her medications have also caused side effects such as drowsiness, nausea, and depression.

1    *Id.*  Upon consideration of the evidence, the ALJ found that Plaintiff's medically determinable

2    impairments could reasonably be expected to cause the alleged symptoms, but that her statements

3    concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent

4    with the medical evidence and other record evidence.  *Id.*  The ALJ, citing to medical records and

5    treatment notes, determined that the evidence supports a degree of functional limitation as to her

6    physical impairments but not to the extent alleged.  (AR 27-28).  The ALJ identified inconsistencies

7    in the record, including: an August 2018 treatment record wherein Plaintiff's treating provider

8    noted Plaintiff's reported pain was out of proportion with findings and that there was no organic

9    cause for her alleged pain; another treatment note that did not mention sitting as an exertional and

10   postural movement that exacerbated Plaintiff's pain; and Plaintiff's report that "she was able to put

11   on her socks, tie her shoes, sit for one hour, and drive[.]"  *Id.* (citing Exs. 8F, 9F, 12F).  The ALJ

12   found the overall record shows Plaintiff retains the ability to perform a range of work consistent

13   with the assessed RFC.  *Id.*  The ALJ acknowledged Plaintiff's record of treatment and medical

14   imaging revealed abnormalities in her hip and knees consistent with her allegations but that a

15   "treatment record suggesting gradual improvement including progressing from using a walker to a

16   single point cane and riding a tricycle" shows that Plaintiff "is able to perform work at a reduced

17   range of sedentary level with additional limitations."  (AR 28).  The ALJ therefore assessed the

18   RFC as noted above.  *Id.*

19        The ALJ examined the opinions of healthcare practitioners in the record, finding non-

20   persuasive the opinions of Dr. Aruf Softa, consultative examiner Dr. Robert Wagner, and the initial

21   prior administrative findings of the state agency consultant who relied on Dr. Wagner's opinion.

22   (AR 29-30).  The ALJ found the prior administrative findings at the reconsideration level to be

23   more persuasive as being more consistent with the record, including to Plaintiff's continued use of

24   a single point cane.  Based on Plaintiff's hearing testimony that she continues to use a cane for

25   ambulation, the ALJ assessed that an additional limitation requiring the use of a cane in the

26   workplace is warranted.  The ALJ found the opinion of Dr. Donald Longjohn non-persuasive as

27   unsupported by any of the opining source's examination findings and "devoid of any narrative

28   explaining [the assessed] degree of limitation."  (AR 30).  The ALJ found Dr. Longjohn's opinion

4

1  that an assistive device was medically necessary consistent with the overall medical evidence of

2  record.  *Id.* (citing Exs. 12F, 17).

3       The ALJ found unpersuasive discharge instructions Plaintiff was provided following

4  various hospital visits and/or procedures from March 2018 to June 2019 because "these discharge

5  instructions and temporary restrictions/recommendations … are stock instructions following acute

6  procedures/visits or complaints that are not intended to last 12 months in duration."  (AR 30) (citing

7  Exs. 1F, 12F, 16F, 23F, 31).  The ALJ reasoned that Plaintiff's purported need for a walker or

8  crutches are never seen in the record, her medical records fail to note any ongoing use of a walker

9  after June 2019 for a 12-month period, and most records showed improvement to the point that a

10  walker is no longer needed because a cane is adequate support.  *Id.*  The ALJ therefore found these

11  discharge instructions without probative value in assessing long-term limitations or determining a

12  12-month RFC.  *Id.*

13       The ALJ summarized that the record shows Plaintiff has some limitations as supported by

14  her treatment records for her knees and hip, medical imaging revealing abnormalities in her hip and

15  knees, and her hearing testimony, but that treatment records showing gradual improvement

16  including progression from using a walker to a single point cane and riding a tricycle, and the lack

17  of supporting evidence to show that she is unable to sit for prolonged periods, support a finding

18  that she can perform a range of sedentary work under the assessed RFC.  (AR 30-31).

19       At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work

20  based on the vocational expert's testimony that Plaintiff's past work as a childcare leader exceeded

21  the RFC.  (AR 31).  The ALJ found that Plaintiff is a younger individual on the alleged disability

22  onset date pursuant to 20 C.F.R. § 416.963 and has at least a high school education.  *Id.*  The ALJ

23  determined that using the Medical-Vocational Rules as a framework supports a finding that Plaintiff

24  is not disabled regardless of whether she has transferable job skills.  *Id.* (citing SSR 82-41 and 20

25  C.F.R. Part 404, Subpart P, Appendix 2).

26       At step five, the ALJ found that there are jobs that exist in significant numbers in the

27  national economy that Plaintiff could perform. *Id.*  The ALJ cited to document specialist, lens block

28  gauger, callout operative, and telephone quotation clerk, based on the testimony of the vocational

1    expert.  (AR 32).  The ALJ therefore concluded a finding of "not disabled" was appropriate.  *Id.*

2    **B.    Medical Record and Hearing Testimony**

3    The relevant hearing testimony and medical record were reviewed by the Court and will be

4    referenced below as necessary to this Court's decision.

5    **II.    LEGAL STANDARD**

6    A district court's review of a final decision of the Commissioner of Social Security is

7    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

8    Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

9    based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence"

10   means "relevant evidence that a reasonable mind might accept as adequate to support a

11   conclusion."  (*Id*. at 1159) (quotation and citation omitted).  Stated differently, substantial evidence

12   equates to "more than a mere scintilla[,] but less than a preponderance."  (*Id*.) (quotation and

13   citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to

14   support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and

15   citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

16   consider the entire record as a whole rather than searching for supporting evidence in

17   isolation.  (*Id.*).

18   The court will review only the reasons provided by the ALJ in the disability determination

19   and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205,

20   42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

21   judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

22   evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d

23   1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

24   of an error that is harmless.  (*Id.*).  An error is harmless where it is "inconsequential to the [ALJ's]

25   ultimate nondisability determination."  (*Id*). (quotation and citation omitted).  The party appealing

26   the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

27   *Sanders*, 556 U.S. 396, 409-10 (2009).

28   A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits

6

within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  (*Id.*).

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental

7

work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. (*Id.*). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. (*Id.*).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

III.   **ISSUES AND ANALYSIS**

Plaintiff seeks judicial review of the Commissioner's final decision denying her application and raises two issues:

> 1.   The ALJ improperly rejected the opinion of Dr. Donald Longjohn; and
>
> 2.   The ALJ impermissibly rejected her subjective symptom testimony. (Doc. 18 at 12-17).

A.   **Whether the ALJ Erred in Rejecting Dr. Longjohn's Opinion**

1.   Parties' Contentions

Plaintiff contends the ALJ improperly rejected the opinion of her hip surgeon Dr. Donald Longjohn in finding the opinion "unsupported by any of [Dr. Longjohn's] examination findings

and is devoid of any narrative explaining [the assessed] degree of limitations[.]" (Doc. 18 at 13). Plaintiff argues the ALJ fails to support his rejection of the opinion with substantial evidence as the ALJ failed to consider the clinical findings and explanations of the record medical evidence which showed "Plaintiff's previously placed hardware had come [loose], requiring revision" and range of motion testing of her left hip "could not even be conducted due to risk of dislocation." *Id.* (citing AR 539, 650, 854). Plaintiff further contends the ALJ failed to articulate his consideration of the evidence in explicitly stating what portions of the evidence he accepted or rejected. *Id.* at 13-14.

Defendant contends the ALJ properly considered the persuasiveness of Dr. Longjohn's opinion in discounting that opinion as inconsistent and "not well supported" with the record. (Doc. 21 at 9). Defendant argues that the ALJ found Dr. Longjohn's opinion of severe limitations was inconsistent with his own examination findings "which showed that Plaintiff's hip was clinically stable" and the objective medical evidence showed generally normal findings. *Id.* at 10. Defendant points to Dr. Longjohn's various examination notes of Plaintiff from June 2019 to November 2020 acknowledging "objective findings [that] were generally the same" including Dr. Longjohn's finding as to "flexion of the hip to 180 degrees but with some interior groin pain" and his recommendation of a total left hip revision surgery which "[a]s of November 2020, Plaintiff had still not undergone[.]" *Id.* (citing AR 50, 646-52, 826-27, 846-48, 854-56). Defendant further argues the ALJ found the opinion was not supported by the evidence as the ALJ noted Dr. Longjohn failed to provide support for his opinion that Plaintiff was limited to sitting for one hour, standing for 30 minutes, and only sitting and standing for 90 minutes total in an eight-hour workday. *Id.* Defendant argues the record does not show that Plaintiff was being treated for any other ongoing severe conditions which impose the opined degree of limitations as to Plaintiff's ability to stand, walk, or sit, and points out that in September 2019, Plaintiff reported "that she was not doing physical therapy and was able to ride a tricycle 15 to 30 minutes every day to pick up her daughter[.]" *Id.* (citing AR 30, 749, 852).

## 2.    Governing Authority

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. §

416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The

ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

### 3. Dr. Longjohn's Opinion

Dr. Donald Longjohn submitted a physical medical source statement regarding Plaintiff's condition on September 17, 2019. (AR 749-752, Ex. 17F). He noted Plaintiff was seen once before on June 11, 2019, and that she was diagnosed with "mechanical loosening of left hip replacement" and rheumatoid arthritis. (AR 749). He noted Plaintiff's symptoms of pain in the left hip "moderately severe – requires opioids." *Id.* He identified the clinical findings and objective signs as "limited range of motion left hip with pain." *Id.* He noted he is "awaiting authorization and further workup – will require revision surgery" in describing Plaintiff's treatment and response, including any that may have implications for working. *Id.* He noted Plaintiff did not have any neurological abnormalities and was negative for straight leg raise in sitting and supine. *Id.* He affirmed that Plaintiff's impairments lasted or can be expected to last at least 12 months but denied emotional factors contributing to the severity of Plaintiff's symptoms and functional limitations. *Id.* He indicated: Plaintiff could walk two to four city blocks without rest or severe pain; could sit one hour before needing to get up; could stand 30 minutes at one time before needing to sit down or walk around; could sit and stand/walk for 90 minutes in total in an eight-hour workday with normal breaks; needs a job that permits shifting positions at will from sitting, standing, or walking

Dr. Longjohn also found Plaintiff would not need to include periods of walking around during an eight-hour workday; with prolonged sitting, should have her legs elevated at or above waist level for 50 percent of the time during an eight-hour workday; and required a cane or other handheld assistive device as medically necessary for standing and walking based on Plaintiff's symptoms of pain and loose left hip replacement implants. (AR 749-750). Dr. Longjohn indicated

1    Plaintiff could never lift and carry in a competitive work situation more than ten pounds and could

2    rarely carry less than 10 pounds.  (AR 750).  He denied Plaintiff could twist, stoop/bend,

3    crouch/squat, or climb stairs/ladders and noted Plaintiff does not have any significant limitations

4    with reaching, handling, or fingering.  (AR 751).  He indicated Plaintiff's symptoms likely were

5    severe enough to interfere with attention and concentration needed to perform even simple work

6    tasks 25 percent or more of a typical workday.  *Id.*  He did not evaluate Plaintiff's work stress and

7    denied her impairments are likely to produce good or bad days.  *Id.*  He estimated Plaintiff is likely

8    to be absent from work as a result of her impairments or treatment more than four days per month.

9    *Id.*  He affirmed Plaintiff's impairments as demonstrated by signs, clinical findings, and laboratory

10   or test results reasonably consistent with the symptoms and functional limitations as described in

11   the evaluation.  (AR 752).  He estimated Plaintiff will need to take unscheduled breaks in lying

12   down during a workday multiple times for 30 to 60 minutes at a time.  *Id.*  He noted Plaintiff's

13   onset date for the above limitations is September 23, 2019.  *Id.*

14        The ALJ summarized Dr. Longjohn's assessed limitations: Plaintiff could perform less than

15   sedentary work, sit, stand, and walk for less than two hours in an eight-hour workday; an allowance

16   to elevate legs at or above waist level for 50% of the workday; no twisting, stooping, crouching, or

17   climbing stairs or ladders; an allowance to use an assistive device in the workplace; and require

18   time off-task for 25% or more for even simple work tasks with more than four absences per month.

19   (AR 30).

20            4.    Analysis

21        Upon summarizing Dr. Longjohn's assessed limitations, the ALJ found his opinion was not

22   persuasive and stating conclusively that the opinion "is unsupported by any of [Dr. Longjohn's]

23   examination findings" and "is devoid of any narrative explaining this degree of limitation."  (AR

24   30).  The ALJ acknowledged Dr. Longjohn's opinion was consistent with the overall medical

25   evidence only insofar that an assistive device was medically necessary for Plaintiff.  *Id.*

26        The Court agrees with Plaintiff that the ALJ's rejection of Dr. Longjohn's opinion is

27   "woefully inadequate" such that the ALJ failed to articulate how or why any of Dr. Longjohn's

28   statements are unsupported by the examination findings or otherwise explain the relevance or

significance of the examination findings to the objective medical evidence.  The sole reason the ALJ provides for discounting the opinion is that Dr. Longjohn did not provide any narrative explaining the degree of assessed limitations.  However, Dr. Longjohn's medical source statement noted Plaintiff's diagnoses, symptoms, need for revision surgery, and identified clinical findings and objective signs of limited range of motion to the left hip with pain before considering the impact of Plaintiff's impairments and opining as to her functional limitations in the workplace.  (AR 749).  Specifically, Dr. Longjohn acknowledged Plaintiff had diagnoses of mechanical loosening in Plaintiff's left hip replacement and rheumatoid arthritis, both of which appear throughout the record.  *See* (AR 649-51) (clinical notes dated August 13, 2019, noting impression of rheumatoid arthritis, that"[t]here is concern for possible cup loosening on radiographic evidence[,]" that Plaintiff "was seen and evaluated with Dr. Longjohn[,]" and assessments of mechanical loosening left total hip arthroplasty with metal-on-metal articulation and rheumatoid arthritis); (AR 854) (clinical notes dated October 29, 2020, noting diagnoses of rheumatoid arthritis and status post left total hip arthroplasty, now with mechanical loosening with metal-on-metal articulation).

Without any explanation how these examination findings did not support nor are relevant to Dr. Longjohn's assessed limitations, the ALJ failed his duty to set forth "how" he considered the supportability of Dr. Longjohn's assessment in finding his opinion not persuasive.  *See Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'") (quotation omitted); *Gonzales v. Kijakazi*, No. 1:20-cv-1530-SKO, 2022 WL 267438, at *12 (E.D. Cal. Jan. 28, 2022) ("[C]urrent Ninth Circuit law … requir[es] a detailed and thorough summary of conflicting evidence, and an interpretation of findings thereon, [and] the ALJ must explicitly address evidence that supports and is consistent with a less-than persuasive medical opinion[], and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons.");  *Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *8 (E.D. Cal. Feb. 17, 2021) ("the ALJ must explain how the agency considered the supportability and consistency of a medical opinion.… [T]he ALJ [is not allowed] to forego articulation of their 'reason or reasons' altogether; rather, [the new regulations] provide specific articulation requirements.").

13

Though the ALJ found Dr. Longjohn's opinion consistent as to Plaintiff's need for an assistive device for ambulation, the ALJ failed to explain or point to any material inconsistency between Dr. Longjohn's other findings and the overall medical record.  The ALJ noted the record bore inconsistencies including treatment notes documenting various exertional and postural movements exacerbated Plaintiff's pain "but sitting was not mentioned" and Plaintiff reported she was able to sit for one hour and drive.  (AR 28).  However, the ALJ fails to refute or acknowledge the consistency of Dr. Longjohn's opinion that Plaintiff could sit only one hour at a time with her testimony thereto.  *See* (AR 647 ["She is able to sit for about an hour in a chair before starting to feel pain and discomfort in her left hip."], AR 749).  Without any showing as to how or why any of Dr. Longjohn's findings are inconsistent with any other medical source in the record, the ALJ improperly discounted Dr. Longjohn's opinion on this basis.  *Woods*, 32 F.4th at 792.[2]

Because the ALJ failed to adequately address how Dr. Longjohn's opinion lacked supportability or consistency, or provide any other reason to discount the opinion, he improperly found the opinion not persuasive.  Therefore, the ALJ's finding that Dr. Longjohn's opinion was not persuasive is not supported by substantial evidence.

**B.    Whether the ALJ Impermissibly Rejected Plaintiff's Subjective Symptom Testimony**

1.    Parties' Contentions

Plaintiff contends the ALJ improperly rejected her subjective pain testimony that her physical impairments prevented her from prolonged sitting and required her to elevate her legs while in a seated position.  (Doc. 18 at 15).  Plaintiff argues that though the ALJ noted improvements to her knee pain following knee replacement, the ALJ failed to cite to any evidence to demonstrate either of her two other conditions, the failure of the instrumentation of her left hip

---

[2] While the Commissioner argues that certain evidence supports finding that Dr. Longjohn's opinion fails the consistency and supportability factors (*see* Doc. 21 at 9-10), this argument is an improper post hoc rationalization because the ALJ neither articulated these reasons for discounting the opinion nor cited the same evidence identified by the Commissioner in addressing Dr. Longjohn's opinion.  Accordingly, the Court disregards the arguments.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

1    and rheumatoid arthritis, improved such that she is able to perform sedentary work.  *Id.*  Plaintiff

2    contends the ALJ failed to provide any clear and convincing reason for rejecting her complaints of

3    pain specific to rheumatoid arthritis and specific to her hip.  *Id.* at 16.

4          Defendant contends the ALJ properly discounted Plaintiff's symptomology testimony in

5    noting that though the medical record supports a degree of functional limitation, the record showed

6    normal findings.  (Doc. 21 at 12).  Defendant argues the ALJ did not err in discounting Plaintiff's

7    subjective complaints as inconsistent because Plaintiff's condition improved with treatment and

8    her activities of daily living ("ADLs") in performing personal care, driving, and riding a tricycle

9    show she can do more than the extent of her alleged limitations.  *Id.* at 13.

10          2.    Governing Authority

11          The ALJ is responsible for determining credibility,[3] resolving conflicts in medical

12    testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  A

13    plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental

14    impairment or disability.  42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an

15    individual's statements of symptoms alone are not enough to establish the existence of a physical

16    or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)

17    ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional

18    impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104,

19    1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

20    Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible

21    requires the ALJ to engage in a two-step analysis.  *Id.* at 1112.  The ALJ must first determine if

22    "the [plaintiff] has presented objective medical evidence of an underlying impairment which could

23    reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*,

24

25    _____

26    [3] SSR 16-3p, which applies to disability applications heard by the agency on or after March 28, 2016, eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation "is not an examination of an individual's character," but an endeavor to determine how "symptoms limit an individual's ability to perform work-related activities."  SSR 16-3p, 2017 WL 5180304, at *3.  Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a claimant's testimony.  *E.g., Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).

27

28

1    504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not

2    require the plaintiff to show that his impairment could be expected to cause the severity of the

3    symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.

4    *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

5    　　　If the first step is met and there is no evidence of malingering, "the ALJ must provide

6    'specific, clear and convincing reasons' for rejecting the [plaintiff's] testimony."  *Treichler v.*

7    *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).  *See*

8    *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

9    credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings

10   that support this conclusion, and the findings must be sufficiently specific to allow a reviewing

11   court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not

12   arbitrarily discredit the plaintiff's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

13   　　　The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

14   [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits."

15   *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

16   2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v.*

17   *Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if

18   the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,'

19   the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595,

20   597 (9th Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the

21   ALJ's rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489,

22   494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

23   　　　The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1)

24   ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior

25   inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that

26   appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

27   follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities."  *Smolen*, 80 F.3d

28   at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

1    identified in SSR 16-3P.  (*Id.*) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).

2    Accord *Bray*, 554 F.3d at 1226. These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
> other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
> type, dosage, effectiveness, and side effects of any medication an individual takes
> or has taken to alleviate pain or other symptoms; (5) Treatment, other than
> medicatiòn, an individual receives or has received for relief of pain or other
> symptoms; (6) Any measures other than treatment an individual uses or has used to
> relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15
> to 20 minutes every hour, or sleeping on a board); and (7) Any other factors
> concerning an individual's functional limitations and restrictions due to pain or
> other symptoms.

9    SSR 16-3P, 2017 WL 5180304, at *7.  *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

10   supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533

11   F.3d at 1039 (citations and internal quotation marks omitted).

12       The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

13   demanding requirement in Social Security cases.'"  *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

14   Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)). "A

15   finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a

16   reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible

17   grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter

18   v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

19       "The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical

20   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,*

21   260 F.3d 1044, 1049 (9th Cir. 2001).  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

22   statements about the intensity and persistence of your pain or other symptoms or about the effect

23   your symptoms have on your ability solely because the objective medical evidence does not

24   substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully

25   substantiated by the objective medical record, the ALJ must provide additional reasons for

26   discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must

27   specify what testimony is not credible and identify the evidence that undermines the [plaintiff's]

28   complaints – '[g]eneral findings are insufficient.'" (*Id.*) (*quoting Reddick v. Chater*, 157 F.3d 715,

1    722 (9th Cir. 1998)).

2    However, the medical evidence "is still a relevant factor in determining the severity of the

3    [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

4    The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence

5    from testimony that is "contradicted" by the medical records and concluded that contradictions with

6    the medical records, by themselves, are enough to meet the clear and convincing standard.

7    *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

8                                          3.    Analysis

9    The ALJ summarized Plaintiff's subjective symptom testimony from the hearing (AR 27),

10    as set forth above in Section I(A).  After finding that Plaintiff's impairments could reasonably be

11    expected to cause some of her alleged symptoms, the ALJ concluded that Plaintiff's statements

12    concerning the intensity, persistence, and limiting effects of his symptoms are not entirely

13    consistent with the record.  (AR 27); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely

14    include this [boilerplate] statement in their written findings as an introduction ... before

15    [identifying] what parts of the claimant's testimony were not credible and why.").

16    In discounting Plaintiff's testimony, the ALJ reasoned that (1) Plaintiff's statements were

17    inconsistent with the objective medical evidence showing her condition improved, and (2)

18    Plaintiff's activities of daily living were consistent with the assessed RFC.  (AR 27-29).

19                            a.    *Plaintiff's purported inconsistent statements are not a clear and*

20                                  *convincing reason to reject her symptomology testimony.*

21    The ALJ acknowledged Plaintiff's medical records supports a degree of functional

22    limitations, noting Plaintiff reported knee pain, hip pain, joint swelling, morning stiffness, muscle

23    weakness, and rheumatoid arthritis.  (AR 27).  The ALJ noted Plaintiff underwent surgery of her

24    right knee and left hip and that diagnostic imaging revealed other issues to her knees and hip.  *Id.*

25    The ALJ acknowledged that treating providers prescribed Plaintiff various medications to treat her

26    pain and that Plaintiff underwent other treatment modalities including physical therapy, Remicade

27    infusions, and pain management.  (AR 28).  The ALJ further noted that physical examinations also

28    provide a degree of support with frequent findings of reduced range of motion and tenderness to

1    palpitation in the knees and hips, reduced leg strength, and other findings.  *Id.*

2        However, the ALJ found Plaintiff's condition improved, citing to treatment notes showing

3    from February 2019 to September 2019, Plaintiff graduated from using a walker for ambulation to

4    a single point cane to being able to regularly ride a tricycle to pick up her daughter, "which entailed

5    a 15 [to] 30 minute ride[.]"  *Id.*  The ALJ noted in September 2019, Plaintiff denied knee pain and

6    from this period onward, she showed some normal findings of strength, sensation, and gait, despite

7    residual loss of range of motion.  *Id.* ("A January 2020 note from a treating physician further

8    indicated that [Plaintiff's] knee pain has improved tremendously since surgery.")  Thus, the ALJ

9    concluded the record shows that Plaintiff has a degree of functional limitation "but not to the extent

10   alleged."  *Id.*

11       The ALJ then noted the "record bears other inconsistencies[,]" citing to a treating provider's

12   August 2018 evaluation that Plaintiff's "reported pain was out of proportion with findings, and that

13   there was no organic cause for her alleged pain[.]"  (AR 28, 528).  The ALJ cited to another

14   treatment note that indicated certain exertional and postural movements exacerbated Plaintiff's pain

15   but noted that "sitting was not mentioned[.]"  *Id.* (citing Ex. 9F).  The ALJ also cited to Plaintiff's

16   testimony that she was able to put on her socks, tie her shoes, sit for one hour, and drive before

17   finding that the record shows she "retains the ability to perform a range of work consistent with the

18   [assessed RFC]."  *Id.*  The ALJ concluded that Plaintiff's record of treatment for her knees and hip

19   and medical imaging revealing abnormalities in her knees and hip are consistent with her

20   allegations but that "treatment record suggesting gradual improvement including progression from

21   using a walker to a single point cane and riding a tricycle" show Plaintiff is able to perform work

22   at a reduced range of sedentary level with additional limitations.  *Id.*

23       The ALJ's citation to a treatment note that did not mention "sitting" as a movement that

24   exacerbated Plaintiff's pain does not demonstrate an inconsistency with Plaintiff's alleged

25   limitations thereto.  Another treatment note signed by Dr. Longjohn reported "she is usually pain

26   free when resting or sitting down."  *See* (AR 561) (Plaintiff's pain "is made worse by bending,

27   changing position, walking, twisting, lifting, climbing, increased physical activity and standing a

28   long time."); (AR 646) (June 11, 2019, clinical note of Dr. Longjohn).  Dr. Longjohn noted in that

1   same visit that Plaintiff "is able to sit for about an hour in a chair before starting to feel pain and

2   discomfort in her left hip." (AR 647). These records do not demonstrate any inconsistency in

3   Plaintiff's alleged limitations as it is conceivable she experiences pain and discomfort after sitting

4   for more than an hour. Likewise, that Plaintiff is able to ride a tricycle for 15 to 30 minutes at a

5   time does not make inconsistent her alleged pain in sitting for longer than an hour. Nor does the

6   Court find any inconsistency based on the ALJ's citation to Dr. Sildorff's August 28, 2018, clinical

7   impression of Plaintiff noting that "her exam is limited by pain out of proportion to her clinical

8   findings and she reports severe limitations in her ability to perform her ADL's" but that "[t]here

9   appears to be no acute organic cause to her pain with no indication of infection, trauma, or neoplasm

10  on exam and imaging." (AR 528). As Plaintiff correctly notes, her alleged period of disability

11  began on January 15, 2019, almost five months following Dr. Sildorff's examination, and therefore

12  that record is of limited relevance. *See Gutierrez v. Kijakazi*, No. 1:21-cv-00181-ADA-GSA, 2023

13  WL 8370148, at *7 n. 4 (E.D. Cal. Dec. 4, 2023) ("[Certain exhibits to which the ALJ cited]

14  substantially preceded the alleged disability onset date … and are thus of limited relevance."),

15  *findings and recommendations adopted*, 2024 WL 1641030, at *1 (Apr. 16, 2024) ("the ALJ

16  repeatedly cited to medical evidence in the record that was purportedly inconsistent with plaintiff's

17  limitations without noting that such evidence preceded the alleged disability date by approximately

18  one to two years[.]").

19          The ALJ failed to explain how the cited findings contradict Plaintiff's pain testimony. Thus,

20  the ALJ failed to offer a clear and convincing reason to discount Plaintiff's credibility based on any

21  purported inconsistency.

22                  b.      *Plaintiff's activities of daily living do not provide a clear and*

23                          *convincing reason to reject her symptomology testimony.*

24          An ALJ may reject a plaintiff's subjective symptom testimony if it is inconsistent with the

25  plaintiff's activities of daily living. *Tommasetti*, 533 F.3d at 1039. Specifically, in discounting a

26  plaintiff's credibility, an ALJ properly may rely on ADLs: (1) when daily activities demonstrate

27  the plaintiff has transferable work skills, and (2) when daily activities contradict the plaintiff's

28  testimony as to the degree of functional limitation. *Orn*, 495 F.3d at 639. However, "disability

1    [plaintiffs] should not be penalized for attempting to lead normal lives in the face of their

2    limitations." *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act

3    does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home

4    activities may not be easily transferable to a work environment where it might be impossible to rest

5    periodically or take medication.").  "The mere fact that a plaintiff has carried on with certain daily

6    activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any

7    way detract from [their] credibility[.]"  *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)

8    (quoting *Vertigan*, 260 F.3d at 1050).

9        As noted above, the ALJ considered and relied on Plaintiff's reported ADLs of being able

10    to put on her socks, tie her shoes, sit for one hour, drive, and regularly ride a tricycle for 15 to 30

11    minutes at a time.  (AR 28).  The ALJ determined that the overall record shows Plaintiff "retains

12    the ability to perform a range of work consistent with the [assessed RFC]" at "a reduced range of

13    sedentary level with additional limitations."  *Id.*

14        However, in rejecting Plaintiff's testimony, the ALJ fails to adequately explain how

15    Plaintiff's described ADLs conflict with her claimed limitations or demonstrate an ability to

16    function in the workplace.  That she at times is able to put on socks, tie her shoes, drive, and ride a

17    tricycle for 15 to 30 minutes at a time does not undermine Plaintiff's claim she is unable to sustain

18    work without experiencing discomfort or pain.  *See Webb*, 433 F.3d at 688; *Orn*, 495 F.3d at 639

19    Nor does the ALJ show how these occasional activities equate to transferable work skills.  *See, e.g.,*

20    *Wilson v. Comm'r of Soc. Sec. Admin.*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (finding a plaintiff's

21    occasional driving does not render him able to work); *Costa v. Berryhill*, 700 Fed. Appx. 651, 653

22    (9th Cir. 2017) ("The ability to accomplish daily tasks irregularly does not necessarily equate with

23    an ability to work.").  Thus, the undersigned cannot ascertain which of Plaintiff's symptomology

24    testimony the ALJ rejected based on ADL evidence, or why.  *See, e.g., Isis A. v. Saul*, No. 18-cv-

25    01728-W-MSB, 2019 WL 3554969, at *6 (S.D. Cal. Aug. 5, 2019) ("Because the ALJ did not

26    identify any actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain

27    which of Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence.")

28    (citing *inter alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

1    For these reasons, the ALJ did not identify a specific, clear, and convincing reason for

2    discrediting Plaintiff's symptom testimony when he did not explain how those ADLs either

3    contradicted Plaintiff's testimony or equaled transferable work skills.

4                             *       *       *       *       *

5    In sum, the ALJ failed to properly consider the supportability and consistency of Dr.

6    Longjohn's opinion before finding it unpersuasive and failed to provide clear and convincing

7    reasons supported by substantial evidence in discounting Plaintiff's subjective symptomology

8    testimony.  While an ALJ's error may be harmless where she provides valid reasons for disbelieving

9    a plaintiff's testimony in addition to invalid reasons (*Molina*, 674 F.3d at 1115 (citing cases)), here,

10   the ALJ provided no valid reasons for rejecting Plaintiff's symptomology testimony.  Accordingly,

11   the error is not harmless.

12   **C.    Remedy**

13   Plaintiff requests this case be remanded for further proceedings and a new decision.  (Doc.

14   18 at 17).  "The decision whether to remand for further proceedings or simply to award benefits is

15   within the discretion of court."  *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d

16   1226, 1232 (9th Cir. 1987)).  "Remand for further administrative proceedings is appropriate if

17   enhancement of the record would be useful."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis

18   omitted) (9th Cir. 2004).

19   In this case, the ALJ erred by failing to properly consider the supportability and consistency

20   of Dr. Longjohn's opinion before finding it unpersuasive and by failing to offer any clear and

21   convincing reason supported by substantial evidence to reject Plaintiff's symptomology testimony.

22   Given these errors, the Court concludes that remand for further proceedings is warranted because

23   additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted

24   herein.

25   **IV.    CONCLUSION AND ORDER**

26   For the reasons stated above, **IT IS HEREBY ORDERED** that:

27   1.  Plaintiff's motion for summary judgment (Doc. 18) is GRANTED;

28   2.  The ALJ's decision (Doc. 13) is REVERSED;

3.  This matter is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and

4.  The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Rosalia Razo and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  __**August 8, 2025**__ 

_____
UNITED STATES MAGISTRATE JUDGE